# W. H. CORNWELL *v.* S. E. KAIUE.

ORIGINAL.

TRIED DECEMBER 18, 1906.     DECIDED DECEMBER 18, 1906.

FREAR, C.J., HARTWELL AND WILDER, JJ.

BALLOTS—*classes of, held invalid.*

>   The following ballots, all cast in the same precinct, are held invalid: four ballots, each having a small circle at or near the end of the lower right leg of the cross opposite the first name on the ballot; five ballots, each having all the crosses well formed except one, which was not a cross such as is required by the statute, but was so made in itself and added to by other marks as to indicate an intention to render the ballot distinguishable.

OPINION OF THE COURT BY FREAR, C.J.

This is a county election contest instituted under the Laws of 1905, act 39, ch. 11. The petitioner was returned as having received at the last election 346 votes for the office of supervisor of the county of Maui for the district of Wailuku, while his only opponent, the respondent, was returned as having received 351 votes, a majority of 5. The petitioner alleges various errors as having been committed by the inspectors of election in respect to both the counted and rejected ballots in each of the four precincts composing the district, corrections of which would, if taken by themselves, be sufficient to change the result of the election. Upon the suggestion of the court the petitioner took the stand at the outset for the purpose of showing that he had definite knowledge or information in regard to such errors sufficient to show that this was not merely a fishing expedition or proceeding for a recount as distinguished from a contest under the statute. He succeeded in doing this. The court then exam-

ined the rejected ballots in three of the precincts, inasmuch as it was to these alone that the knowledge or information of the petitioner related. The result was a gain of five for the petitioner—sufficient to make the candidates even were it not for the fact that the respondent also discovered a number of votes which the inspectors had rejected but which should have been counted for him. The court then examined the counted ballots in each of these precincts as well as both the counted and rejected ballots in the remaining precinct, with the result that the respondent made a net gain of two, giving him in all a majority of 7.

A total of 815 votes were cast in the district, of which 91 were marked for neither or both of the candidates in question, leaving 724 cast for one or the other. Of these, 361 were cast for the petitioner and 363 for the respondent, a majority of 2. The inspectors, however, rejected 14 of those cast for the petitioner and omitted to count one which they held valid, thus giving him only 346, and rejected 12 of those counted for the respondent, thus giving him 351, a majority of 5, or, allowing the petitioner the vote which the inspectors held valid but omitted to count, the respondent had a majority of only 4 to start with on the inspectors' showing. The court counted for the petitioner 6 of the ballots rejected by the inspectors and rejected 7 of those counted by the inspectors, thus leaving him with 346, the number returned by the inspectors. The court counted for the respondent 6 votes of those rejected by the inspectors and rejected 4. of those counted, thus giving him a net gain of 2 or a total of 353, a majority of 7 in all. To put it differently, of the 361 votes cast for the petitioner and 363 for the respondent, 15 are rejected for the petitioner and 10 for the respondent, leaving them with 346 and 353 respectively—a majority of 7 for the respondent.

The grounds upon which ballots were challenged by counsel, and which were held valid or invalid according to the circumstances by the court, fall for the most part within those covered by the decision in *Brown v. Iaukea*, ante, p. 131. There were,

however, two classes of ballots which were not covered by that decision. One of these consisted of 4 ballots in one precinct, all for the petitioner, upon each of which there was a small circle at or near the end of the lower right leg of the cross mark in the space opposite the name of the petitioner, which was the first name on the ballot. These circles were all of about the same size and in about the same location with respect to the cross mark and in the same space on the ballot. They were apparently made deliberately for purposes of identification. The other class consisted of 5 ballots in the same precinct, all for the petitioner, upon each of which all the cross-marks but one were of ordinary size, in their proper spaces and well formed, but upon each of which there was one cross (all or all but one being the first or the last cross on the ballot) which was of extraordinary character. In one of them, for instance, one of the lines was several times the usual length, extending beyond the proper space in each direction and across it were two other well formed lines a considerable distance apart, one of which evidently was not made merely in an attempt to retrace the other. In the case of each of these five ballots the mark was not strictly a cross as required by the statute and could not be treated as a bona fide attempt to make a cross such as is required by the statute. The form of the mark as a whole seemed to indicate that the voter deliberately intended to depart from the statute and mark his ballot in such a way that it could be distinguished. This is the first election case so far as we are aware in these islands in which any of the ballots showed upon their face an intention to violate the statute by marking them for purposes of identification. In all other cases, so far as we know, the marks for which ballots have been rejected were made apparently through ignorance, carelessness or want of skill, but the ballots had to be rejected because the marks were not in conformity with law and were of such a character that they might, if allowed, be resorted to in the future for purposes of identification.

At the conclusion of the trial the court rendered judgment orally as follows:

The judgment of the court is that the respondent, S. E. Kaiue, was elected supervisor of the county of Maui for the district of Wailuku at the election held November 6, 1906, for the term beginning at 12 o'clock noon on the 1st day of January, 1907.

*E. M. Watson* for petitioner.

*A. Lewis* and *L. J. Warren* for respondent.

#### CONCURRING OPINION OF WILDER, J.

In my opinion ballots having more names voted for on them than authorized by law should not have been counted for either party, but the rejection of those ballots would still leave petitioner with less votes than respondent, and I therefore concur in the conclusion of the majority opinion.